# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA FRAHER, | CASE NO.   1:10-cv-00951-MJS (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| v. | |
| DR. S. HEYNE, et al., | (ECF No. 9) |
| Defendants. | AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS |

**SCREENING ORDER**

I.   **PROCEDURAL HISTORY**

On May 27, 2010, Plaintiff Cecilia Fraher, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983.  (ECF No. 1.) Plaintiff consented to Magistrate Judge jurisdiction.  (ECF No. 6.)  The Court screened Plaintiff's Complaint (ECF No. 1) on October 31, 2011 and determined that Plaintiff stated a single cognizable claim; all other claims were dismissed with leave to amend.  (ECF No. 8.)  Plaintiff was given leave to amend the complaint or notify the Court of her desire to

proceed only on her cognizable claim. (Id.) Plaintiff elected to file a First Amended Complaint. (ECF No. 9.) It is now before the Court for screening.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

## III. SUMMARY OF FIRST AMENDED COMPLAINT

The First Amended Complaint alleges the following Central California Women's Facility ("CCWF") officials violated Plaintiff's Eighth Amendment rights: (1) Dr. Steven Heyne, Chief Medical Officer; (2) Dr. Robert Mitchell, primary care physician; and (3) R.N. Le.

Plaintiff alleges the following:

On April 28, 2009, Plaintiff met with Dr. Bommer, a cardiologist, for her biannual appointment. Dr. Bommer noted in his report that Plaintiff had been experiencing viral symptoms for the previous ten days. (Compl. at 4.) Two days later Plaintiff saw Dr. Mitchell for a follow up appointment. Plaintiff informed Dr. Mitchell that she was experiencing "difficulty breathing, dry cough, back/shoulder pain, night fevers and loss of appetite." (Id.) In response, Dr. Mitchell discussed swine flu and menopause. Plaintiff pointed out that she underwent a full hysterectomy fifteen years prior and that this information was reported in her medical file. Dr. Mitchell prescribed cough medicine. (Id.)

Between May and June 5, 2009, Plaintiff saw R.N. Le at least three times. Each time Le refused to provide an emergency referral and insisted that Plaintiff was experiencing menopause in spite of the fact that Plaintiff's file clearly recorded her 1994 hysterectomy. (Id.)

On June 5, 2009, Plaintiff reported to Dr. Mitchell that her symptoms had escalated since their April 30, 2009 appointment. Dr. Mitchell again refused to test for swine flu but agreed to a urinalysis to be conducted by R.N. Le. The urinalysis detected blood in Plaintiff's urine; R.N. Le suggested Plaintiff was menstruating, again in spite of the hysterectomy. (Id.) Dr. Mitchell then prescribed "'An intense combination of Anti-biotic'" for two weeks and scheduled a follow up appointment in two days. (Id.)

By June 26, 2009, Plaintiff's antibiotics had run out, her symptoms intensified, and Dr. Mitchell had not conducted a follow up appointment. Plaintiff filed an inmate medical appeal reporting her circumstances. On July 7, 2009, Dr. Mitchell saw Plaintiff in response to the inmate appeal. He ordered a chest x-ray, referred Plaintiff to cardiology, and

3

scheduled a follow up appointment in seven days.  (Id.)

Plaintiff received the x-ray on July 10, 2009.  On July 18, 2009 Plaintiff was taken to the CCWF emergency room after blacking out in her cell.  Plaintiff was transported to Madera Community Hospital's intensive care unit in critical condition.  Plaintiff's lungs were drained of blood at the hospital.  (Id.)  On July 20, 2009, Dr. Mitchell reviewed Plaintiff's July 10, 2009 x-rays "and deems 'Everything with in normal limits, no follow-up is required.'" (Id.)  At the time Dr. Mitchell made this conclusion "Plaintiff lay dying" in Madera Community's intensive care.  (Id. at 5.)  Four days later Plaintiff was admitted to the hospital with "respiratory failure, anemia, congestive heart failure and aortic regurgitation." Her condition was categorized as "'poor'" and she was "in danger of 'sudden cardiac death.'"  (Id. at 4.)

Plaintiff was sent to U.C. Davis for emergency open-heart surgery on July 25, 2009. The damage to Plaintiff's heart was temporarily repaired on August 3, 2009.  "Reports attribute destruction of valves was a direct result of 'unknown infection - not dental.'  This infection is the same one reported to Defendants Mitchell, M.D. and R.N. Le in April but dismissed without diagnostic testing as menopause."  (Id. at 5.)

Dr. Heyne signed first and second level written responses to Plaintiff's June 26, 2009 inmate appeal, endorsing the care provided by Dr. Mitchell on July 7, 2009.  (Id.) "Plaintiff was forced to file numerous appeals beginning August 23, 2009 in an attempt to obtain post-operative care, medications and follow-up visits to U.C. Davis cardiology all delays in treatment were noted and signed at 1st and 2nd levels by Dr. S. Heyne, C.M.O." (Id.)

At all times during the aforementioned events, "'Plaintiff was classified as a high-risk

4

chronic care patient'" (Id.) "whose medical history provides extra precautions against infection need to be taken . . . ." (Id. at 6.)

Plaintiff asserts that the Defendants either provided, or, in Dr. S. Heyne's case, approved medical treatment so deficient that it violated Plaintiff's Eighth Amendment right to adequate medical care. (Id. at 6.)

## IV.   ANALYSIS

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

Plaintiff claims that she received inadequate medical care in violation of the Eighth Amendment. "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett

5

v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (internal quotations omitted)).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060). The complete denial of medical attention may constitute deliberate indifference. Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000). Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. McGuckin, 974 F.2d at 1060. In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994). '[A] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim.'" Turner v. Greenman, 2011 WL 1343120, *3 (E.D. Cal. Apr. 7, 2011) (quoting Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

1981).

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. The Ninth Circuit has held that mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). To state an Eighth Amendment claim in this case, Plaintiff must show that the "course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course of treatment in conscious disregard of an excessive risk to [Plaintiff's] health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

### A.     Serious Medical Need

Plaintiff alleges that she presented symptoms indicative of infection - "difficulty breathing, dry cough, back/shoulder pain, night fevers and loss of appetite" - and was classified by CCWF as a high risk patient with a medical file entry that instructed extra precaution be taken to avoid infection. Plaintiff's medical file accurately reported that she had undergone a hysterectomy in 1994.

Plaintiff has adequately alleged that she had a serious medical need and therefore satisfied the first element of her Eighth Amendment claim as to all the Defendants. Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor would think worthy of comment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial

pain).

B. **Deliberate Indifference**

1. R.N. Le

Defendant Le saw Plaintiff at three appointments between May 2009 and June 5, 2009. Plaintiff complained to Le of progressively worsening symptoms and at a fourth appointment, sometime in June, Plaintiff had passed blood in her urine. Defendant Le insisted that Plaintiff was "'just going through menopause'" (Compl. at 4) or "'on her period'" (Id. at 6). Defendant Le had Plaintiff's medical records clearly showing the 1994 hysterectomy in front of him at each of the four appointments. The records also instructed that medical personnel should be particularly vigilant for infection. (Id.) The hysterectomy made Le's diagnosis highly unlikely or even medically impossible and left the possibility of Plaintiff having an infection unaddressed.

The First Amended Complaint alleges that attributing Plaintiff's symptoms to menopause and menstruation amounted to a failure to treat Plaintiff's serious medical needs in violation of the Eighth Amendment because Plaintiff had previously undergone a hysterectomy. Plaintiff's symptoms combined with the unique danger of an infection was a serious medical need.

However, the second element of Plaintiff's claim against Le is not satisfied. Plaintiff does not allege that Le **actually was aware** of the hysterectomy or danger of infection; instead, Plaintiff alleges that the information was entered in her medical file and her medical file was available to Le, and, Plainitff at least infers, Le should have reviewed the file, learned of Plainitff's history and made the correct diagnosis.

A prison official does not act in a deliberately indifferent manner unless the official

8

"knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir. 2002) ("If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk.") Defendant Le is not alleged to have known of the hysterectomy or danger of infection; therefore, his diagnoses, though perhaps negligent, can not be said to have reflected deliberate indifference. Le found a female patient with progressive flu like symptoms. The fact that Le diagnosed Plaintiff with menopause and menstruation and refused an emergency referral does not amount to deliberate indifference under these circumstances.

Plaintiff has not stated a cognizable Eighth Amendment claim against Defendant Le.[1] The Court will grant Plaintiff an opportunity to amend. In order to state a cognizable claim, Plaintiff must allege truthful facts in support of the conclusion that Le knew of and disregarded an excessive risk to Plaintiff's health.

  2.  Dr. Mitchell

The First Amended Complaint alleges that Dr. Mitchell saw Plaintiff on the following dates: April 30, 2009; June 5, 2009; and July 7, 2009. On July 20, 2009, Dr. Mitchell reviewed Plaintiff's x-rays. Plaintiff's alleges that her medical file identified her as a patient for which infection was a grave risk and that extra effort should be employed with Plaintiff

---

[1] The Court's previous screening order determined that Plaintiff had stated a cognizable claim against Defendant Le because Plaintiff alleged that Le knew Plaintiff had undergone a hysterectomy and that an infection posed an increased risk of harm to Plaintiff. (ECF No. 8 at 7.) The First Amended Complaint omits this crucial allegation and instead only alleges that the hysterectomy and infection risk were in Plaintiff's medical file. This omission may have been inadvertent; nevertheless, Plaintiff was instructed that an amended pleading supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997), and an amended complaint must be "complete in itself without reference to the prior or superceding pleading," Local Rule 220. Should Plaintiff chose to amend to include the allegation that Defendant Le was aware of Plaintiff's medical conditions, she must include factual allegations that explain exactly how Le came to this knowledge.

to avoid or combat infection.  Considering Plaintiff's medical status, Dr. Mitchell allegedly exhibited deliberate indifference when he failed to treat Plaintiff's symptoms of infection more vigorously.

At the outset the Court observes that Plaintiff's claim against Dr. Mitchell suffers from the same flaw identified in the claim against R.N. Le,  Plaintiff does not allege that Dr. Mitchell was actually aware of her serious medical need.  Plaintiff informed Dr. Mitchell of her hysterectomy but alleges no facts to indicate that Dr. Mitchell knew of the particular danger an infection posed to Plaintiff.  Because Dr. Mitchell is not alleged to have known of Plaintiff's serious medical need, his treatment can not be said to have been deliberately indifferent.    Farmer, 511 U.S. at 837.

Plaintiff's factual allegations also fall short of adequately alleging that Dr. Mitchell was deliberately indifferent to Plaintiff's serious medical need.  Dr. Mitchell prescribed medication on two occasions, ordered a urinalysis and chest x-rays, and referred Plaintiff to cardiology.  The fact that Plaintiff disagrees with Dr. Mitchell's course of treatment does not state a claim.  Turner, 2011 WL at *3 (citing Franklin, 662 F.2d at 1344).  Dr. Mitchell may have negligently treated Plaintiff, but even that does not state a claim.  Estelle, 429 U.S. at 106.  Dr. Mitchell's failure to keep a follow up appointment on June 7, 2009, does not amount to deliberate indifference because there are no factual allegations that indicate Dr. Mitchell missed this appointment intentionally.  McGuckin, 974 F.2d at 1060 ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.")

Plaintiff has not stated a cognizable Eighth Amendment claim against Dr. Mitchell.  The Court's previous screening order tasked Plaintiff with describing explicitly what Dr.

Mitchell knew of Plaintiff's medical needs, when, and what treatment was provided. The First Amended Complaint does not address those issues. The Court will grant Plaintiff one final opportunity to amend his claim against Dr. Mitchell. In order to state a claim, Plaintiff must adequately allege that, in light of Plaintiff's unique medical history, Dr. Mitchell's course of treatment was medically unacceptable and taken in conscious disregard of an excessive risk to Plaintiff's health. McIntosh, 90 F.3d at 332.

### 3. Dr. Heyne

Plaintiff alleges that she submitted an inmate appeal complaining of Dr. Mitchell's constitutionally deficient care on June 26, 2009 and later submitted numerous additional appeals after her heart surgery in an attempt to receive the recommended post-operation care. Plaintiff also alleges that Dr. Heyne had actual knowledge of Plaintiff's serious medical need but nevertheless endorsed the constitutionally deficient care by signing the prison responses that rejected Plaintiff's claims.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of

11

constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

As discussed in the preceding section, the factual allegations do not support the conclusion that Dr. Mitchell was deliberately indifferent to Plaintiff's serious medical needs. Because the care provided has not been adequately alleged to be deficient, Dr. Heyne can not be said to have known of any violations described in the June 26, 2009 inmate appeal.

The responses to Plaintiff's appeals filed after surgery are alleged to have been endorsed by Dr. Heyne and delayed Plaintiff's access to care. However, Plaintiff does not allege that the decisions to delay care were the product of deliberate indifference. In fact, Plaintiff does not explain why approval for certain procedures was delayed or denied. Absent these facts, the Court can not determine if the delays were violations in and of themselves that Dr. Heyne was aware of when he endorsed the prison responses.

The Court's previous screening order informed Plaintiff that an amended complaint must include facts explaining what information was reflected in the inmate appeal and responses so the Court could determine that Plaintiff's conclusions were adequately supported with factual allegations. Plaintiff has failed to correct this deficiency in the First Amended Complaint. In order to state a claim against Dr. Heyne in his role as the Chief Medical Officer, Plaintiff must provide additional facts showing that Dr. Heyne knew of medical care violations and failed to act to prevent them.

## V. CONCLUSION AND ORDER

Plaintiff's First Amended Complaint does not state a claim for relief under section 1983. The Court will grant Plaintiff one **final** opportunity to file an amended complaint.

Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff opts to amend, she must demonstrate that the alleged acts resulted in a deprivation of her constitutional rights. Iqbal, 129 S.Ct. at 1948-49.  Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'"  Id. at 1949 (quoting Twombly, 550 U.S. at 555 (2007)).  Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of her rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although she has been given the opportunity to amend, it is not for the purposes of adding new claims.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff should carefully read this Screening Order and focus her efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

13

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of her First Amended Complaint, filed November 29, 2011;

2. Plaintiff's First Amended Complaint is dismissed for failure to state a claim upon which relief may be granted;

3. Plaintiff shall file an amended complaint within thirty (30) days; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated:   December 28, 2011           /s/ *Michael J. Seng*
ci4d6                                UNITED STATES MAGISTRATE JUDGE