# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA FRAHER, | Case No. 1:10-cv-0951-LJO-MJS PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| DR. S. HEYNE, et al., | |
| Defendants. | (ECF Nos. 46, 67) |
| | TWENTY-ONE DAY OBJECTION DEADLINE |

**I.   PROCEDURAL HISTORY**

Plaintiff Cecilia Fraher, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 27, 2010.  The case proceeds under 28 U.S.C. § 1915A on the Second Amended Complaint ("Complaint") against Defendants Le and Mitchell for providing allegedly inadequate medical care at Central California Women's Facility in violation of the Eighth Amendment.

On May 16, 2013, Defendants filed a motion for summary judgment.  Plaintiff filed opposition on July 17, 2013.  After Defendants filed a reply, Plaintiff then filed a surreply without leave of court (ECF No. 63). Defendants moved to strike the surreply. (ECF No. 67).  The Court grants Defendant's said motion to strike.  It does not consider Plaintiff's surreply in ruling on this motion for summary judgment.

Defendants' motion for summary judgment is ready for ruling.  Local Rule 230(*l*).

## II. SUMMARY JUDGMENT LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment. They need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If Defendants meets their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir.

2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial. Aloe Vera of America, Inc. v. U.S., 699 F.3d 1153, 1165 (9th Cir. 2012) (citing Anderson, 477 U.S. at 249).

## III.  THE COMPETING POSITIONS

Plaintiff's suit alleges that Defendants failed to treat Plaintiff's medical symptoms properly over a several month period of time. She claims that as a result of this mal- or non-treatment, Plaintiff suffered serious infection and required emergency heart valve surgery.

### A.  Defendants' Position[1]

Plaintiff has a history of cardiac problems. From 2007 to 2009 she received cardiac treatment at the University of California-Davis ("UC-Davis").

On April 28, 2009, Plaintiff saw Dr. Bommer at UC-Davis. Dr. Bommer noted that Plaintiff complained of minor problems. He did not feel she needed emergency treatment. He recommended a follow-up cardio appointment in six months.

On April 30, 2009, Plaintiff saw Defendant Mitchell, a physician at Central California Women's Facility ("CCWF"), to discuss her cardio history. Plaintiff did not complain of chest pains. Her vital statistics were within normal limits. Defendant Mitchell determined Plaintiff had no peripheral edema. He referred her for further testing at UC-Davis.

Defendant Le was a registered nurse at CCWF. Plaintiff saw Defendant Le as a walk-in patient at the B Yard Clinic on May 4, 2009. At that time she complained of a cough, chest tightness, pain, and a sore throat. Defendant Le provided tablets and lozenges for her cough. Plaintiff again saw Defendant Le with the same symptoms on May 14, 2009. Defendant Le concluded that Plaintiff's complaint of flu-like symptoms was inconsistent with his objective assessment. He provided cough lozenges and referred her to a doctor. He told her to drink fluids and submit another health care services request form if her condition worsened.

---

[1] Summarized from Defendants' statement of undisputed facts 1-55, ECF No. 46-3.

Plaintiff again complained of chest pain on June 1, 2009. Her vital signs were normal. Plaintiff refused treatment.

Defendant Mitchell examined Plaintiff on June 5, 2009. Plaintiff denied having chest pain or shortness of breath. Defendant Mitchell ordered a urinalysis test which revealed a moderate amount of blood in her urine. Defendant Mitchell thought she might have a urinary tract infection. He prescribed medicine, ordered a blood count, and directed Plaintiff to return for a follow-up in five days.

No follow up visit with Defendant Mitchell took place within that five day period, but Plaintiff did undergo an echocardiogram evaluation at UC-Davis that month and it showed normal heart function without need for emergency medical care.

Defendant Mitchell saw Plaintiff again on July 7, 2009, with complaints of night sweats and blood. Defendant Mitchell found Plaintiff had a low grade fever, but no indication of a systemic infection. Defendant Mitchell ordered a chest x-ray and prescribed antibiotics. He referred Plaintiff for an appointment at UC-Davis and for another medical appointment at CCWF in seven days.

Plaintiff underwent a chest x-ray on July 10, 2009. It was read as negative for pneumonia, lung lesions, and changes suggestive of heart failure.

On July 17, 2009, Plaintiff submitted a health care services request form complaining of worsening cough, trouble breathing, and foot pain. She was transferred to Madera Community Hospital and there found to have severe impairment of aortic valve function. She then was transferred to UC-Davis and underwent replacement of her aortic valve and mitral valve repair. Initially UC-Davis physicians suspected cardiac infection, but surgery revealed otherwise.

Dr. B. Barnett, a qualified medical expert, reviewed Plaintiff's medical history and records and opined as follows: Neither Defendant caused or could have prevented Plaintiff's valve deterioration or need for surgery. She had no infection which caused her heart problems. Given the nature of her particular cardiac disorder, there is a high probability Plaintiff would have needed additional surgery or a heart valve replacement in her future because her implanted valve is of a kind known to deteriorate over time.

Defendants provided Plaintiff appropriate treatment for the symptoms she presented during her appointments with each of them.

### B. Plaintiff's Position[2]

Plaintiff was an inmate at CCWF at all times relevant to this case.

Plaintiff has a history of cardiac problems and received some treatment for her cardiac conditions between 2003 and 2009. In April 2009, Plaintiff visited the cardiovascular medical clinic at UC-Davis regarding her cardiac disorder and pacemaker. The doctor to whom she described her flu-like symptoms determined that she would best be treated at CCWF. He recommended Plaintiff have a follow-up visit in six months.

Plaintiff complained of flu-like symptoms from and after April 2009 onwards, but no x-rays, urinalysis, or blood testing was done until June 5, 2009. Plaintiff (a lay person without known medical training) believes that if such tests had been done earlier she would not have required emergency surgery.

On April 30, 2009, Plaintiff saw Defendant Mitchell regarding her treatment at UC-Davis. Although Defendant Mitchell determined Plaintiff did not have peripheral edema, peripheral edema was never a symptom of her condition; even on admission to Madera Community Hospital in July 2009, she had no peripheral edema.

Plaintiff saw Defendant Le on May 4, 2009 as a walk-in patient. She complained of a cough, chest-tightness, pain, chest congestion, coughing with sputum, and a sore throat. Defendant Le provided Plaintiff with cough drops and attributed her symptoms to menopause - even though Plaintiff had previously undergone a hysterectomy and, according to Plaintiff (but disputed by Defendant Le) her medical file showing this was open on his desk during the appointment. Plaintiff also alleges (and Defendant Le disputes) that they discussed Plaintiff's cardiac history at length.

Plaintiff saw Defendant Le again on May 14, 2009 with similar medical complaints. Defendant Le again attributed her symptoms to menopause. He referred Plaintiff to a medical doctor.

On June 1, 2009, Plaintiff complained of chest pain, but declined, as futile, another

---

[2] Summarized from Plaintiff's separate statement of undisputed facts 1-54, ECF No. 58.

appointment with Defendant Le.

Plaintiff saw Defendant Mitchell on June 5, 2009 with complaints of chest tightness, back pain, neck pain, shoulder-pain, shortness of breath, an inability to work-out or sleep, and a chronic cough.  Urinalysis revealed blood in Plaintiff's urine, and so Mitchell prescribed medications for a possible urinary tract infection.  Defendant Mitchell ordered additional tests, but did not recommend that they be performed urgently.

Plaintiff alleges, and again Defendant Le denies, that Defendant Le told Defendant Mitchell the blood in Plaintiff's urine was due to menstruation, even though Plaintiff was fifty-two years old and post-hysterectomy.

Plaintiff's June 2009 echocardiogram was normal.  If, as Defendants claim, her heart valves wore out over a period of at least ten years, the damage would have appeared on this echocardiogram.  Since it did not, it must have occurred between mid-June and July 18, 2009, and could have been prevented with proper care by Defendants.

The finding of mild anemia in June 2009 was an indication Plaintiff had a more serious condition for which she should have received additional medical care.

Defendant Mitchell's finding on July 7, 2009, that Plaintiff was suffering from a low grade fever should have been taken more seriously given her significant cardiac history.  Mitchell simply asked Plaintiff to advise what medical treatment she needed.

Plaintiff was admitted to the Madera Community Hospital on July 17, 2009, with complaints of coughing, difficulty breathing, and foot pain.  A July 18, 2009, echocardiogram indicated severe impairment of aortic valve function and a possible infection.  Plaintiff underwent surgery August 3, 2009.  Doctors did not then find an infection because she had been given a large amount of antibiotics two weeks prior to the surgery.

Given Plaintiff's cardiac history, Defendants should have taken her complaints more seriously and provided immediate emergency care.  Had they done so, she would have avoided the July 2009 emergency surgery.

## IV. **EIGHTH AMENDMENT LEGAL STANDARD**

The Eighth Amendment's prohibition against cruel and unusual punishment

protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, an inmate must demonstrate deliberate indifference to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. Deliberate indifference may be shown "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the

7

way in which prison physicians provide medical care." <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096) (internal quotation marks omitted).

## V. ANALYSIS AND FINDINGS

Clearly the undisputed evidence shows that at all times relevant here Plaintiff had a serious medical need - an aging aortic replacement valve and symptoms of general malaise - which, if untreated or improperly treated, could result in further significant injury and/or unnecessary pain. The determinative issue therefore is whether either Defendant knew of and disregarded that serious medical need and the risk of further significant injury resulting therefrom. In resolving this issue, the evidence must be viewed in the light most favorable to Plaintiff.

### A. Defendant Le

Defendants submit competent expert medical evidence to support findings that Defendant Le, a registered nurse, properly responded to Plaintiff's flu-like symptoms with cough drops and cold medication notwithstanding her cardiac condition. Defendant Le's evidence supports a finding that Plaintiff's valve deterioration was inevitable, not preventable, and unrelated to the testing and treatment regimen they followed. In this regard the not-disputed evidence shows that Defendant Le responded to Plaintiff's May 4 and May 14, 2009, symptoms of cough, chest tightness, general body pain, chest congestion, sore throat, and headache with cold medications. When the symptoms continued, Defendant Le provided cough lozenges, told Plaintiff to drink fluids and referred her to a medical doctor.

There is no competent evidence before the court to refute Defendants' evidence, described above, that such care and treatment was fully within the standard of care for a registered nurse seeing a patient like Plaintiff under those circumstances. Plaintiff feels that given her medical history, the response should have been different and, indeed, much more aggressive. However, Plaintiff is not qualified to render such medical opinions before this Court and has not provided any evidence from a qualified source to refute Defendants' contrary evidence. <u>See</u> Fed. R. Evid. 701 (where a witness is not testifying as an expert, his opinion testimony is limited to one based on his perception

rather than one based on scientific knowledge). Even if Plaintiff had submitted competent evidentiary support for her opinion it would not be enough to defeat Defendant Le's motion for summary judgment. At most, it would reflect evidence of negligence, not the gross or known malfeasance needed to support a finding of deliberate indifference.

Plaintiff alleges, in effect, that Defendant Le's obvious mis-attribution of her symptoms to menopause reflected deliberate indifference to her medical needs. There is a dispute as to whether any such attribution occurred. If Plaintiff were believed in this respect, the statement is so preposterous that a fact finder could conceivably equate it to deliberate indifference. That would not however alter the outcome here as there is no evidence whatsoever that the making of such statement, or the mistaken belief it reflects, impacted Plaintiff's treatment in any way. As noted, the evidence shows that even if Defendant Le held that belief, he treated Plaintiff's symptoms in a medically proper way and referred Plaintiff to a medical doctor when it appeared his course of treatment was not effective. There is no evidence that he communicated the mistaken belief to anyone else or that anyone else acted in accordance with it. Moreover, the only competent medical opinion evidence presented is that Plaintiff's surgery and valve replacement and repair resulted from factors wholly unrelated to anything Defendants did or did not do. While one might sympathize with Plaintiff's logical belief that her symptoms led to the ultimate hospitalization and surgery, there is no qualified, competent expert opinion evidence to support that theory. The evidence properly before the Court is to the contrary.

Plaintiff has presented no evidence that action or inaction by Defendant Le caused Plaintiff's to suffer wanton or unnecessary pain, injury, other impairment or a substantial risk of any of those things. Plaintiff has not met her burden to defeat Defendant Le's motion for summary judgment.

### B. Defendant Mitchell

Similarly, Defendants present competent medical opinion evidence to the effect that Defendant Mitchell properly treated Plaintiff's symptoms by ordering diagnostic tests, providing medications, and ensuring proper follow-up. Defendants' competent expert

declaration supports a finding that Plaintiff's valve deterioration and surgery were unavoidable and not the result of any treatment, or the lack thereof, by Defendant Mitchell. The undisputed evidence shows that after Plaintiff visited UC-Davis as part of her continued cardiac care, Mitchell saw her frequently, specifically on April 30, on June 5, and again on July 7, 2009. He listened to her symptoms, prescribed medications, and ordered additional testing. None of the tests indicated that Plaintiff required emergency medical care.

Again, as with Defendant Le, there is nothing beyond Plaintiff's lay opinion before the Court that would suggest Defendant Mitchell's response was inadequate and/or demonstrated deliberate indifference to Plaintiff's medical needs. Plaintiff's opinion is not competent to raise a question of fact as to the accuracy of Defendant Mitchell's expert medical opinion evidence.

Plaintiff having presented no admissible evidence that Defendant Mitchell caused Plaintiff's valve deterioration and subsequent need for valve surgery or in any other way showed deliberate indifference to her or her medical condition, Defendant Mitchell also is entitled to summary judgment.

## VI.     RECOMMENDATIONS

In conclusion, there is no evidence that either Defendant acted with deliberate indifference toward Plaintiff or that the actions or alleged inaction of either were the cause of any unnecessary or otherwise avoidable symptoms, treatment or suffering. Defendants are entitled to judgment as a matter of law.

Accordingly, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on May 16, 2013, be GRANTED, thereby concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings

and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   February 17, 2014       /s/ *Michael J. Seng*
                                                 UNITED STATES MAGISTRATE JUDGE